Belknap, } No. 3819.
May 3, 1949.

LIONEL BEAULE *v.* JOHN F. WEEKS *& a.*

454

*Normandin & Normandin* (*F. A. Normandin* orally), for the plaintiff.

*Robert W. Upton* and *Frederic K. Upton* (*Mr. Frederic K. Upton* orally), for the defendant Weeks.

*Nighswander & Lord* and *Hugh H. Bownes* (*Mr. Bownes* orally), for the defendant Guyer.

DUNCAN, J. In the course of a pre-trial hearing before the Court, the plaintiff offered evidence upon which subject to the exception of the defendant Weeks, the Trial Court ruled that the stop sign on Oak Street, designed to regulate traffic entering North Main Street, was "lawfully erected and maintained." This evidence tended to prove that the sign was erected by the State Highway Commissioner in April, 1937, pursuant to provisions of P. L., c. 91, as amended by Laws 1935, c. 117, s. 1, and that a regulation over his signature, requiring vehicles approaching North Main Street to "first come to a full stop" and to "yield the right of way to vehicles travelling" thereon, was posted in compliance with the cited statute. At the same hearing it was agreed by the parties that no city ordinance with respect to the stop sign, and no other regulation referring to it, was contained in the records of the city clerk. The Highway Commissioner's regulation and the return of posting were subsequently received in evidence before the jury, subject to exception by the same defendant.

In submitting the cases to the jury, the Court quoted subsections 1 through 4 of part 19, section 1, chapter 188, Laws 1945, and charged that "the stop sign . . . is lawfully erected and maintained and conforms to standards set by the highway commissioner. . . . " The defendant Weeks duly excepted to these instructions, and to the quotation of the statute upon the ground that it was not applicable.

Since the sign was erected in accordance with Laws 1935, dissimilar provisions of the 1945 statute quoted by the Court were not controlling. They merely authorized regulation of the use of highways in towns.

The plaintiff's evidence indicated establishment of the stop sign in 1937, by the Highway Commissioner, in compliance with the provisions of Laws 1935, c. 117, s. 1. Section 2 of the same act conferred limited authority upon city councils, permitting them to establish stop signs only within the compact portions of cities. However material changes in these sections were subsequently effected. In 1941 the limitation upon the authority of city councils was removed and their powers were extended to the establishment of stop intersections throughout cities. Laws 1941, c. 35, s. 1. Section 1, c. 117, Laws 1935 was amended by elimination of the requirement that a return of posting of regulations promulgated by the Highway Commissioner be "filed with the city or town clerk," and the requirement that a return be filed with the State Highway Department, and a copy "with the town clerk for information," was substituted.

Laws 1941, *c*. 42, *s*. 1. In *State* v. *Moore*, 93 N. H. 169, 171, it was said with respect to the last cited act: "This latter statute changed the requirements necessary for the legal establishment of stop signs. It was the obvious purpose of the statute to obtain uniformity . . . and after its enactment all state-erected signs . . . were again 'erected' to conform to the new requirements. It follows that the erection of the stop sign in 1936 (whether legally erected or otherwise) had no bearing on the legality of the situation in 1942." Similarly in this case, legal erection of a sign in 1937 had no bearing upon "the legality of the situation" in 1946 unless by reason of requirements of the Laws of 1945 hereinafter considered.

The absence of evidence of re-erection of this sign by the State Highway Department following the 1941 amendments, suggests that the Commissioner considered his authority to erect stop signs within cities supplanted by that conferred upon city councils. This was the view taken by the Commissioners to Revise the Public Laws. Their revision of Laws 1935, *c*. 117, *s*. 1, as amended by Laws 1941, *c*. 42, *s*. 1 appears as R. L., *c*. 107, *ss*. 7, 8, 10. All references to the authority of the Highway Commissioner to establish stop inter-sections and erect stop signs in cities were eliminated. Clearly with the enactment of the Revised Laws effective in 1942, the authority of the Highway Commissioner with respect to the stop sign in question was terminated. On the termination of his authority, the regu-lations promulgated by him in 1937, which would have required the driver of the Weeks truck to come to a full stop and yield prece-dence to the defendant Guyer, were no longer effective. The legis-lation of 1941, and the Revised Laws, effective in 1942, contained no provisions to prevent this result. Under the provisions of R. L., *c*. 66, *s*. 13 (VIII), (Cf. R. L., *c*. 107, *s*. 7, *supra*), the authority to provide for the control of traffic by stop signs and to regulate the use of highways in Laconia resided exclusively with the city council; and "at the time of the accident all highway stop signs in [Laconia] were subject to the requirements of this statute" (*Legere* v. *Buinicky*, 93 N. H. 71, 72) as well as any applicable provision of Laws 1945, *c*. 188.

Certain provisions of Laws of 1945, *c*. 188 are relied upon by the plaintiff to save or reestablish the legality of the action taken by the Commissioner in 1937. Section 1, part 19, subsection 5 of this chapter provides: "Every stop sign, traffic device, or traffic signal erected on any public highway shall be deemed lawfully erected and maintained and to conform to standards set by the highway com-missioner and approved by him as to type, size, installation and

method of operation, until the contrary is proven, in all cases, civil or criminal."

The remaining provisions upon which reliance is placed appear in section 4 of chapter 188. The section is entitled "Effect of Act on Existing Laws." Its pertinent provisions follow. "The repeal by this act of any provision of law, shall not revive any law heretofore repealed or superseded; . . . nor shall such repeal require a new establishment of any stop intersection or the new erection of any stop sign . . . erected and maintained in conformance with the laws prior to the passage of this act, and all such stop signs . . . so erected and maintained shall be deemed lawfully erected and maintained under the provisions of this act . . ."

By virtue of these provisions, it is plain that stop intersections established and stop signs maintained in conformance with the laws in force immediately prior to passage of the act continued to be lawful without re-establishment or "new erection" after passage.

In the view of a majority of the court, the quoted provisions of section 4 operated to legalize any signs erected and maintained in accordance with statutory provisions in force at the time of erection, regardless of their later repeal and regardless of the status of such signs at the time of passage of the act of 1945. It follows that the sign in question must by virtue of the act "be deemed lawfully erected and maintained" at the time of the accident in 1946.

In the view of the minority, the section as a whole indicates no such intention with respect to intersections or signs legal sanction for which was removed by repeal before passage of the act of 1945; and in order to validate the sign involved in this case, it would be necessary to revive the authority vested in the Highway Commissioner in 1935, and divested in 1941 or 1942.

The court is unanimous in the view, however, that the 1945 act did not operate to revive or reestablish the regulation promulgated by the Commissioner in 1937. It follows that while according to the majority view the sign must be deemed lawfully erected and maintained, the agent of the defendant Weeks was under no duty to "yield the right of way" to the defendant Guyer as the Commissioner's regulation would have required. If the defendant's agent were found to have complied with the requirement of the sign that he stop before entering North Main Street, his conduct thereafter, as well as that of the defendant Guyer, was subject to the requirements of R. L., c. 106, s. 3, with respect to the right of way at intersections, provided the vehicles were found to have arrived "at the

intersection at approximately the same instant" as therein provided. *Legere* v. *Buinicky, supra,* 73.

Since the defendant's request that the jury be so instructed was denied subject to exception, the exception is sustained and a new trial ordered. The exception to incorporation in the charge of subsections 1 through 4, part 19, *s.* 1, Laws 1945 is also sustained. The authority thereby conferred is limited to stop signs in towns, and has no application to the case. The instruction that the sign was lawfully erected and maintained, in accordance with the majority view stated above, is held to have been proper, and the exception thereto is overruled. Upon retrial the Highway Commissioner's regulation will be receivable in evidence only for the limited purpose of establishing the legality of the original erection of the sign.

By his motion to set aside the verdicts the defendant Weeks seeks an order for new trial in both cases. There is no doubt that errors pertaining to the legality of the stop sign regulation bore upon the duties of the defendants *inter se,* and that the defendant Guyer benefited from them in the action against him. It does not follow, however, that the defendant Weeks has an interest in the Guyer verdict which entitles him to the relief sought by the motion. The duties of the defendants *inter se* were in issue only to the extent that the rights of the plaintiff were affected. Neither defendant sought adjudication of his own rights against the other. We may assume that if both had been found causally negligent, both would be under a common liability for the single injury resulting to the plaintiff. See *Carpenter* v. *Company,* 78 N. H. 118, 121. Such an injury would nevertheless be the product of action taken by the defendants separately, and neither in cooperation nor in concert. See *Masterson* v. *Railway,* 83 N. H. 190, 192. The plaintiff was entitled to sue them separately, as he did, and verdicts against both would give rise to no rights or liabilities between the defendants, either for contribution or indemnity. *Graveline* v. *Company,* 81 N. H. 279. See also, *Gregg* v. *Company,* 69 N. H. 247; Restatement, Restitution, *s.* 102.

While the errors affected the rights of the plaintiff against the defendant Guyer, they affected no rights of the defendant Weeks against Guyer, and judgment for Guyer in the plaintiff's action would not bar an action by Weeks against Guyer. To the judgment for the defendant Guyer the defendant Weeks is no party, and the only cause of action adjudicated thereby is that of the plaintiff. *Genest* v. *Company,* 75 N. H. 365, 367. The plaintiff has not attacked

the verdict in Guyer's favor, and no exception of his is before us. In short, the plaintiff does not complain and the defendant Weeks has no standing to do so. Upon a new trial, the liability of Weeks may be determined independently of that of Guyer. Under the general rule, applicable to the situation here presented, a grant of a new trial to one defendant will not affect a verdict in favor of a co-defendant from which the plaintiff seeks no relief. In *Crenshaw Bros. Produce Co.* v. *Harper*, 142 Fla. 27, 41, the rule was stated thus: "A co-defendant in a tort action cannot complain of a verdict rendered in the other defendant's favor, because there can be no contribution among tort feasors . . . the only party to the case who has a right to complain of the verdict and the judgment rendered in favor of the other party or parties [defendant] is the plaintiff in the court below." See also, *Marcil* v. *Merriman & Sons*, 115 Conn. 678; *Bicknell* v. *Dorion*, 16 Pick. (Mass.) 478; Annotation, 166 A. L. R. 563. The motion to set aside the verdict for the defendant Guyer was properly denied. Since there must be a new trial in the action against Weeks, other issues presented by the motion need not be considered.

Questions relating to the admissibility of evidence may again arise, and invite consideration. The defendant Weeks excepted to the receipt in evidence of testimony that following the accident his agent stated that he had not stopped at the stop sign. Such statements did not constitute admissions binding upon the defendant. The agent was not a party, and there is no indication that his authority extended to the making of admissions for his employer. *Semprini* v. *Railroad*, 87 N. H. 279. The statements do not appear to have been admissible under the *res gestae* rule (*Bennett* v. *Bennett*, 92 N. H. 379, 386), and at one stage were excluded when offered under that rule. They were not shown to have been spontaneously made, but in reply to inquiries by a police officer approximately a half hour after the accident. The statements should have been consistently excluded.

The trial produced a number of references to proceedings at "the police station." In opening, plaintiff's counsel stated that the officer told Dutile to report to the police station, "and the rest of them to go up to the police station and there act as witnesses later on . . . which of course Lionel Beaule did." A motion by the defendant Weeks for mistrial following this incident was denied. Other references came from the officer. Upon direct examination he testified that he told Dutile that he "would have to go down to

the police station." In an irresponsive answer on cross examination he stated that he "ordered the man into Court for not [*sic.*] failing to stop at the stop sign." The motion for a mistrial was renewed upon both of these occasions and consistently denied. The fact was that Dutile was charged with failure to stop at the stop sign and convicted upon his plea of *nolo*.

The jury was at no time instructed to disregard the statements of counsel and the witness. The finding of the Trial Court that no prejudice resulted to the defendant would be difficult to sustain. While the fact of conviction was not disclosed to the jury, the absence of evidence that no conviction resulted left it open to the jury to infer that it did. The only answer available to the defendant, that his agent was convicted upon a plea of *nolo*, would hardly have cured the prejudice. Such evidence would have been inadmissible if offered by the plaintiff (*Public Service Company* v. *Chancey*, 94 N. H. 259) and it was error to permit him to place the defendant in a position where the latter was required either to offer it himself, or to submit to the risk of no less damaging inference. Similar errors were held to require a new trial in *Burbank* v. *McIntyre*, 135 Cal. App. 482.

Another exception related to testimony by the plaintiff that before he could obtain employment after the accident, he was required by his prospective employer to submit to a medical examination and to then execute a waiver. The defendant objected upon the ground that the testimony was hearsay. While the evidence was objectionable, it is not perceived that the rule against hearsay could be invoked. The plaintiff did not undertake to relate the contents of a medical report if one was made, nor did he repeat any reasons assigned for requirement of the waiver. The evidence was objectionable for lack of relevancy, or of any showing by competent proof that either the examination or the waiver in any way related to injuries claimed to have resulted from the accident. Only by speculation could the jury infer that the plaintiff's difficulties in obtaining employment were chargeable to the defendant. See *Rancourt* v. *Railroad*, 92 N. H. 284, 291. It follows that upon retrial the evidence should be excluded, unless accompanied by competent proof of its relation to the issues.

Other exceptions, not argued or briefed, need not be considered.

*Judgment for the defendant Guyer;*
*New trial in the action against Weeks.*